# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Pavlovich*, 2019 IL App (1st) 180783

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF SLOBODAN PAVLOVICH, Petitioner, and ANETA PAVLOVICH, Respondent-Appellee (Hoffenberg & Block, LLC, Appellant). |
| District & No. | First District, Second Division<br>Docket No. 1-18-0783 |
| Filed | June 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-9779; the Hon. Robert W. Johnson, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Paul J. Bargiel, of Paul J. Bargiel, P.C., and Alan D. Hoffenberg and Gabriela O. Asrow, of Hoffenberg & Block, LLC, both of Chicago, for appellant.<br><br>James J. Macchitelli, of Schaumburg, for appellee. |
| Panel | JUSTICE PUCINSKI delivered the judgment of the court, with opinion.<br>Justices Lavin and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1 In this appeal, Hoffenberg & Block, LLC (H&B), the firm that formerly represented respondent Aneta Pavlovich in these divorce proceedings, argues that the Cook County circuit court erred in denying its final petition for attorney fees brought pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/508 (West 2016)). According to H&B, the trial court erred when it concluded that attorney fees could not be recovered under section 508 of the Act unless there was a written agreement between the attorney and client. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3 On July 18, 2017, a week before the judgment of dissolution was entered in this case, H&B filed its petition for final attorney fees and costs under section 508 of the Act. In that petition, H&B alleged that on June 21, 2016, it was retained to represent respondent in her dissolution proceedings and was later granted leave to withdraw on June 8, 2017. Between the time H&B was retained and the time that it withdrew from representing respondent, H&B performed extensive legal services for the benefit of respondent in her dissolution case. As a result, respondent incurred attorney fees totaling $95,572.55 and costs totaling $2594.67. Respondent paid $30,202.00 of the amount due, leaving an outstanding balance of $67,965.22.

¶ 4 On July 25, 2017, the trial court entered a judgment dissolving the marriage of petitioner Slobodan Pavlovich and respondent.

¶ 5 Respondent filed a corrected motion to strike H&B's fee petition[1] and, in the alternative, a response to it. In the corrected motion to strike, respondent argued that H&B's fee petition should be stricken because H&B failed to attach detailed billing statements or time records and failed to attach a written agreement between H&B and respondent that included a statement of client rights and responsibilities, per the dictates of section 508(c)(2) of the Act (*id.* § 508(c)(2)). In her response to the fee petition, respondent again raised H&B's failure to attach time sheets or billing statements and also argued that the amount of fees sought was unreasonable for the normal and uncomplicated issues involved in the dissolution proceedings. Respondent also argued that the hourly rates charged by H&B attorneys were not usual and customary and that respondent did not benefit from H&B's services because H&B withdrew its representation of respondent on the eve of trial.

¶ 6 Also included in the record is a reply filed by respondent in support of her corrected motion to strike H&B's fee petition. The record does not contain, however, H&B's response to the corrected motion to strike. In her reply in support of her corrected motion to strike, respondent made a number of arguments in response to procedural arguments apparently raised by H&B in its response to the motion to strike. More relevant, however, are respondent's arguments that H&B was not entitled to recover fees under section 508, because it could not demonstrate that there was a written contract between H&B and respondent that contained a statement of the client's rights and responsibilities. She also argued that the reference to recovery under *quantum meruit* in section 508(c)(3) of the Act (*id.* § 508(c)(3)) applied only to terms outside of the written contract; in other words, *quantum meruit* was to be used only where the written

_____

[1]The original motion to strike is not in the record on appeal.

- 2 -

agreement did not provide for a fair amount of fees. According to respondent, H&B could not recover under section 508 of the Act in any form because it lacked a written agreement between it and respondent; thus, H&B's only recourse was to file an independent common-law action for *quantum meruit*.

¶ 7 At the hearing on H&B's fee petition and respondent's corrected motion to strike the fee petition, a number of witnesses testified. Gabriela Asrow and Gloria Block, attorneys with H&B, testified regarding the work they did on behalf of respondent, the complicated nature of respondent's divorce proceedings, the fees and costs incurred by respondent, and the fact that respondent never objected to any of the fees or bills. Alan Hoffenberg, also of H&B, testified that he performed the initial consultation with respondent. At that meeting, respondent gave him her retainer, and he gave her a copy of H&B's retainer agreement and told her to take it home to review, sign, and return it. No one at H&B was able to locate a written agreement signed by respondent.

¶ 8 Respondent testified that she was never provided a written agreement by anyone with H&B and that she never signed a written agreement with H&B. She also testified that she was not given and did not sign a copy of the client's rights and responsibilities. Further, she testified that she questioned both Hoffenberg and Block at least 10 to 20 times about the large bills that she received for their services. Both of them told her that they were only billing her because they planned to seek contribution from petitioner and they needed the bills to use as proof.

¶ 9 In closing, H&B argued that it was seeking recovery of its fees under *quantum meruit*. H&B argued that, not only did the Act allow for *quantum meruit*, but also that the trial court was a court of general jurisdiction that could hear any type of case, including a common-law claim for *quantum meruit*. H&B further argued that the Act did not require that a written contract exist in order to recover under *quantum meruit* and that it would not make sense to require a written contract in such a situation.

¶ 10 In response, respondent argued that section 508(c)(2) of the Act explicitly states that no hearing shall be held on a fee petition unless there exists a written agreement between the lawyer and client that includes a statement of the client's rights and responsibilities. She also argued that *quantum meruit* under section 508 only applies where the terms of the written contract are uncertain or unclear. True *quantum meruit*, respondent argued, is only available if H&B were to file a separate cause of action.

¶ 11 Following the hearing, the trial court entered an order denying respondent's corrected motion to strike the fee petition and indicating that it would subsequently enter an order on H&B's fee petition.

¶ 12 Thereafter, but before the trial court ruled on H&B's fee petition, H&B filed a memorandum in support of its fee petition. In it, H&B argued that it established all of the elements of a common-law claim for *quantum meruit* and that the trial court could award it fees based on *quantum meruit* under either section 508 of the Act or under the common law.

¶ 13 On March 16, 2018, the trial court entered an order denying H&B's petition for fees on the basis that H&B had not entered into a written fee agreement with respondent.

¶ 14 Thereafter, H&B instituted this appeal.

¶ 15 STANDARD OF REVIEW

¶ 16 The sole issue in this appeal is whether section 508 of the Act permits an attorney to seek attorney fees under the theory of *quantum meruit* if he or she does not have a written agreement with the client. The answer to this question requires us to interpret the language of section 508. The interpretation of a statute is a question of law subject to a *de novo* standard of review. *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008).

¶ 17 ANALYSIS

¶ 18 On appeal, there is no dispute that there is no written agreement between H&B and respondent. Rather, H&B argues that the trial court erred in concluding that section 508 required a written agreement between the attorney and the client as a prerequisite to recovery of attorney fees under the Act, even where the attorney seeks to recover under the Act via a theory of *quantum meruit*. Alternatively, H&B argues, even if the trial court was correct in concluding that the lack of a written agreement precluded an award of fees under section 508, it could have heard H&B's common-law claim for *quantum meruit* or should have transferred H&B's claim to the law or chancery division. We hold that H&B's claims are without merit.

¶ 19 The primary goal in statutory construction is to ascertain the intent of the legislature. The best indicator of this intent is the language of the statute, which must be given its plain and ordinary meaning. *People ex rel. Madigan v. Bertrand*, 2012 IL App (1st) 111419, ¶ 20. In interpreting a statute, we must view the statute as a whole, making sure not to read any of its language in isolation. *Board of Education of Woodland Community Consolidated School District 50 v. Illinois State Charter School Comm'n*, 2016 IL App (1st) 151372, ¶ 38. We must avoid any interpretation that would render any portion of the statute superfluous, meaningless, or void. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Just as we may not read out any portion of the statute, we may not alter the plain meaning of a statute's language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Board of Education*, 2016 IL App (1st) 151372, ¶ 38.

¶ 20 Section 508(a) of the Act permits a trial court in a dissolution action, after notice and hearing, to make an award of attorney fees, not only between the parties but between one of the parties and his or her former counsel. 750 ILCS 5/508(a) (West 2016). An award of attorney fees to a party's former attorney is governed by section 508(c) of the Act. Subsection (c)(2) provides in relevant part that no final hearing may be had on an attorney fee petition unless "the counsel and the client had entered into a written engagement agreement at the time the client retained the counsel (or reasonably soon thereafter) and the agreement meets the requirements of subsection (f)." *Id.* § 508(c)(2)(i). Subsection (f) requires that a written engagement agreement have appended to it a statement of the client's rights and responsibilities, as delineated in subsection (f). *Id.* § 508(f).

¶ 21 The Act leaves the decision of whether to award attorney fees within the discretion of the trial court. *Id.* § 508(c)(3). It then provides as follows:

> "The court shall first consider the written engagement agreement and, if the court finds that the former client and the filing counsel, pursuant to their written engagement agreement, entered into a contract which meets applicable requirements of court rules and addresses all material terms, then the contract shall be enforceable in accordance with its terms, subject to the further requirements of this subdivision (c)(3). *** Quantum meruit principles shall govern any award for legal services performed that is

not based on the terms of the written engagement agreement (except that, if a court expressly finds in a particular case that aggregate billings to a client were unconscionably excessive, the court in its discretion may reduce the award otherwise determined appropriate or deny fees altogether)." *Id.*

Fee petitions or writs of *praecipe* for fee hearings under subsection (c) must be filed within the time frame for the filing of a postjudgment motion under section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2016)), *i.e.*, within 30 days of the entry of judgment. 750 ILCS 5/508(a)(5) (West 2016).

¶ 22    Except as otherwise provided in section 508(e)(1), "subsection (c) of this Section is exclusive as to the right of any counsel (or former counsel) of record to petition a court for an award and judgment for final fees and costs during the pendency of a proceeding under this Act." *Id.* § 508(a). Section 508(e) provides in relevant part:

"(e) Counsel may pursue an award and judgment against a former client for legal fees and costs in an independent proceeding in the following circumstances:

(1) While a case under this Act is still pending, a former counsel may pursue such an award and judgment at any time subsequent to 90 days after the entry of an order granting counsel leave to withdraw; and

(2) After the close of the period during which a petition (or praecipe) may be filed under subdivision (c)(5), if no such petition (or praecipe) for the counsel remains pending, any counsel or former counsel may pursue such an award and judgment in an independent proceeding.

In an independent proceeding, the prior applicability of this Section shall in no way be deemed to have diminished any other right of any counsel (or former counsel) to pursue an award and judgment for legal fees and costs on the basis of remedies that may otherwise exist under applicable law; and the limitations period for breach of contract shall apply. *** After the period for the commencement of a proceeding under subsection (c), the provisions of this Section (other than the standard set forth in subdivision (c)(3) and the terms respecting consent security arrangements in subsection (d) of this Section 508) shall be inapplicable." *Id.* § 508(e).

¶ 23    The language of section 508 is abundantly clear: a written agreement between the party and the attorney is required before a party's former attorney will be permitted to recover attorney fees on a petition brought under section 508. This conclusion is supported by several parts of section 508. First, section 508(c)(2) explicitly states that no final hearing may be had unless such a written agreement exists. *Id.* § 508(c)(2) ("No final hearing *** is permitted unless: (i) the counsel and the client had entered into a written engagement agreement at the time the client retained the counsel ***."). Second, section 508(c)(3) specifically directs the trial court to first consider the terms of the written agreement and to enforce those terms if the agreement meets the relevant requirements and addresses all of the material terms. Finally, even in situations where an attorney seeks to recover under *quantum meruit*, such recovery is only permitted for legal services performed outside the written contract. *Id.* § 508(c)(3) ("Quantum meruit principles shall govern any award for legal services performed that is not based on the terms of the written engagement agreement ***."). In other words, even where *quantum meruit* is sought, there still must be a written contract so that it can be determined whether the contract covers the services for which fees are sought.

¶ 24    H&B argues that the *quantum meruit* language of section 508(c)(3) contemplates an award of attorney fees absent a written contract. We disagree. Although it is certainly true that section 508(c)(3) permits recovery of some attorney fees by way of *quantum meruit* in a section 508 petition, such fees are limited to only those for legal services performed outside the written contract. In other words, section 508(c)(3) does not permit a full claim for *quantum meruit*; rather, *quantum meruit* is permitted only for those legal services that fall outside the terms of the otherwise existing written agreement. This interpretation is supported by the fact that the *quantum meruit* language immediately follows the directive that the trial court first consider the required written contract and specifically refers to an "award for legal services performed that is not based on the terms of *the* written engagement agreement." (Emphasis added.) The phrase "*the* written agreement," as opposed to "*a* written agreement," refers back to the written agreement required under section 508(c)(2), indicating that even where a *quantum meruit* award is made, there must still be a written agreement; the *quantum meruit* award is simply for services performed outside the written agreement required under section 508(c)(2).

¶ 25    Moreover, it is impossible to reconcile an interpretation of the *quantum meruit* language of section 508(c)(3) that permits recovery without a written agreement with section 508(c)(2)'s dictate that no final hearing be held on an attorney fee petition unless there exists a written agreement between the client and the attorney. After all, how can a *quantum meruit* award be made absent a written agreement if the trial court is not even permitted to hold a hearing without the presence of a written agreement? These provisions can only be reconciled if the *quantum meruit* language is read, as we do, as only permitting recovery of fees for services performed outside the otherwise existing written contract. See *Hartney Fuel Oil Co. v. Hamer*, 2013 IL 115130, ¶ 25 ("Statutory provisions should be read in concert and harmonized.").

¶ 26    We note that during oral arguments in this matter, counsel for H&B referred to the case of *In re Marriage of Kosterka*, 174 Ill. App. 3d 954 (1988), for the proposition that the Second District held that, even where there is no written agreement between an attorney and a client, a trial court may nevertheless make an award of attorney fees under section 508 on the basis of *quantum meruit*. In *Kosterka*, an attorney who was retained as local counsel by the wife's primary counsel filed a section 508 petition for attorney fees against the wife. *Id.* at 956-57. There was no written agreement between the local counsel and the primary attorney or between the local counsel and the client. *Id.* at 956. The trial court awarded attorney fees to the local counsel, but not in the full amount he requested. *Id.* at 957. The issues on appeal related to whether the local counsel had standing to pursue attorney fees directly from the client, the amount of the fees awarded, and whether the trial court was required to disclose the basis for its order and failed to make specific findings in its order. *Id.*

¶ 27    Although the Second District did affirm the trial court's award of attorney fees, which was based on a theory of *quantum meruit*, we do not find its decision instructive, because the issue of whether section 508 allows recovery of attorney fees on the basis of *quantum meruit* where there is no written agreement was not raised by the parties or addressed by the Second District. In fact, there was no discussion whatsoever regarding the impact that the lack of a written agreement had upon the local counsel's ability to recover attorney fees under section 508. Thus, the Second District was not called upon to construe the specific provisions of section 508, as we are here, and its decision has no relevance to the determination we must make in the present case.

¶ 28    The remainder of H&B's arguments are not directed to the language of section 508. First, H&B argues that a written agreement is not necessary to the formation of an attorney-client relationship. True or not, such a contention is irrelevant to the issue before us. The question at bar is not whether there was an attorney-client relationship between H&B and respondent (there is no dispute on that question) but rather is whether a written agreement is necessary to recovery of attorney fees on a section 508 petition. The former issue has no effect on the latter.

¶ 29    Second, relying on *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996), H&B argues that section 508 is not the sole means by which an attorney can seek to recover from a client attorney fees incurred during a dissolution case. H&B argues that attorneys are free to bring independent common-law claims for fees, such as for breach of contract or *quantum meruit* and that it, in fact, made out a claim for common-law *quantum meruit*. H&B is absolutely correct that section 508 of the Act is not the sole means by which an attorney may recover fees from a client in a dissolution action. Not only does *Nottage* stand for that proposition, but section 508 itself explicitly provides that an independent action may be brought against a client, either 90 days after the attorney has been granted leave to withdraw or after the time period for filing a section 508(c) fee petition. See 750 ILCS 5/508(e) (West 2016).

¶ 30    The problem with H&B's contention, however, is that H&B chose *not* to bring an independent action. Rather, H&B chose to pursue its claim for fees under section 508 of the Act, thereby subjecting itself to the requirements and limitations of section 508. The requirements and limitations under section 508 that we have discussed in this decision were in full effect at the time that H&B filed its fee petition; nevertheless, H&B specifically invoked section 508 in its petition. That H&B had the option to pursue other remedies against respondent is of no matter now, as it chose to forgo those remedies in lieu of proceeding under section 508. The facts that those other options existed and that H&B might have been successful under them do not relieve H&B from compliance with section 508 once it chose to proceed as it did.

¶ 31    Finally, H&B argues that if the trial court was inclined to deny its fee petition under section 508, as a court of general jurisdiction, it still could have heard H&B's common-law claim for *quantum meruit* or, at the very least, referred it to the law or chancery division for decision. H&B's argument fails for the reason that it never actually instituted a claim for common-law *quantum meruit*. As discussed, H&B's fee petition specifically invoked section 508 of the Act and at no point mentioned *quantum meruit* as a basis of recovery, either under section 508 or under the common law. Rather, based on the record before us, it appears that it was not until the hearing that H&B indicated that it was entitled to recovery based on *quantum meruit*, both under section 508 and under the common law. We recognize that, where a party brings a common-law claim for breach of contract and is unable to prove the existence of the contract, he is entitled to proceed under a theory of *quantum meruit* without amending his pleadings. See *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.*, 87 Ill. App. 3d 480, 485 (1980) ("[I]n Illinois, a plaintiff may recover under *quantum meruit* on a claim made under an express contract without amendment of the pleadings where the plaintiff fails to establish the express contract but does show that in fact services were rendered." (Emphasis omitted.)). Here, H&B did not bring a common-law action for breach of contract. Rather, it brought a fee petition under the very specific provisions of section 508 of the Act, despite the very clear limitations in the language of section 508 and despite the option of instituting an independent action for common-law *quantum meruit* without such limitations.

¶ 32    Moreover, although the trial court may be a court of general jurisdiction, we are aware of no obligation of the trial court—and H&B does not cite any authority in support of the proposition—to entertain a cause of action that was not properly pled and that H&B did not raise until the hearing on its fee petition. In fact, it would have been improper. See *Ligon v. Williams*, 264 Ill. App. 3d 701, 707 (1994) ("The court's authority to exercise its jurisdiction and resolve a justiciable question is invoked through the filing of a complaint or petition. *** Thus, the circuit court's jurisdiction, while plenary, is not boundless, and where no justiciable issue is presented to the court through proper pleadings, the court cannot adjudicate an issue *sua sponte*."). H&B also fails to cite any authority for the notion that the trial court had an obligation to fix H&B's strategic misstep by transferring the fee petition to the law or chancery division. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (requiring that the argument section of an appellant's brief contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on"); see also *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986) ("A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research.").

¶ 33    Although we believe that the language of section 508 is plain in requiring the existence of a written contract between the client and attorney, even where recovery is sought under section 508 based on *quantum meruit*, we also acknowledge that such a requirement seems somewhat at odds with the often-stated purpose of section 508's provisions allowing an attorney to collect fees directly from a client under section 508. The divorce act that preceded the Act only permitted one party to a divorce to recover attorney fees from the other party; attorneys were not permitted to file a fee petition directly against their clients. *Nottage*, 172 Ill. 2d at 394. According to numerous courts, the purpose of section 508 permitting attorneys to collect directly from their clients is to "promote judicial economy by eliminating the need for an attorney to bring a separate suit to collect fees from his client." See, *e.g.*, *In re Marriage of Baltzer*, 150 Ill. App. 3d 890, 895 (1986). Clearly, in situations where there exists a written contract between the attorney and client, section 508 eliminates the need for a separate suit for fees. Because of the language chosen by the legislature, however, where a written contract does not exist, section 508 does not eliminate the need for a separate proceeding at all. Rather, an independent action for a common-law claim of *quantum meruit* is an attorney's only recourse under such circumstances.

¶ 34    We do not know whether the legislature intended such a result. Perhaps the legislature intended to eliminate the need for separate suits only where there is a written contract, or perhaps it intended to eliminate the need for separate suits under all circumstances but simply failed in fashioning appropriate language to that effect. In any case, where the language of a statute is plain, we are bound to enforce it as written. *Gabriel Builders, Inc. v. Westchester Condominium Ass'n*, 268 Ill. App. 3d 1065, 1068 (1994) ("If [the language of the statute] is clear and unambiguous, a court must enforce it as written and may not resort to other aids for construction."). Here, for the reasons discussed above, the language of section 508 clearly requires the existence of a written contract before an attorney may recover fees under section 508, even if sought based on a theory of *quantum meruit*. If that is not the result the legislature intended, then it is for the legislature to remedy, not us. See *People v. Holland*, 374 Ill. App.

3d 121, 127-28 (2007) ("Whether this language was a check on the power of the Governor or poor legislative drafting, it is a matter for the legislature to remedy, not this court.").

¶ 35    In sum, we conclude that section 508 of the Act requires the existence of a written contract between the client and the attorney before the attorney may recover attorney fees, whether based on the written contract or on *quantum meruit*, in a petition brought under section 508. Here, there is no dispute that there was no written agreement between H&B and respondent. Accordingly, the trial court did not err in denying H&B's fee petition brought under section 508 of the Act.

¶ 36                                    CONCLUSION

¶ 37    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 38    Affirmed.